J-S58003-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| CLYDE ROGERS, INDIVIDUALLY AND CLYDE ROGERS D/B/A ROGERS FLOORING CO. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| HARLEYSVILLE INSURANCE | |
| APPEAL OF: CLYDE ROGERS | |
| | No. 289 MDA 2016 |

Appeal from the Order Entered January 21, 2016
in the Court of Common Pleas of Berks County
Civil Division at No.: 14-674

BEFORE: GANTMAN, P.J., BOWES, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED SEPTEMBER 13, 2016**

Appellant, Clyde Rogers, appeals from the trial court's order granting the motion for summary judgment of Appellee, Harleysville Insurance. We affirm.

The trial court's opinion aptly sets forth the relevant facts and procedural history of this case, as follows.

> [Appellant] filed a complaint on January 15, 2014. According to this complaint, on January 25, 2012, [Appellant's] work vehicle, a 1999 Dodge B250 STD two door Cargo Van Extended, caught fire. The van was a total loss, and all the tools, equipment, and material inside were destroyed. The van

---

[*] Retired Senior Judge assigned to the Superior Court.

was towed from the scene and has been in storage since then at a rate of $35.00 per day, plus sales tax. The cost to replace the tools lost in the fire is over $7,000.00. [Appellant's] rental van cost was $1,220.68. [Appellant] lost revenue of $14,044.00 for two jobs that were unable to be completed due to the loss. At the time of the incident, [Appellant] owned a commercial auto insurance policy and an inland marine policy (commercial insurance policy) issued by [Appellee].

[The] complaint alleges two counts against [Appellee]: Count one is a breach of contract claim. [Appellant] contend[s] that the[] insurance policies contain provisions to insure property, tools, equipment, and payroll. [Appellant] assert[s] that [Appellee] breached its duty by failing to make appropriate payments upon [] demand. Count two is a bad faith claim arising from [Appellee's] failure to offer [Appellant] a reasonable amount of damages and losses sustained by [him].

On February 17, 2012, [Appellee] issued a payment to [Appellant] in the amount of $5,000.00, the policy limit on unscheduled items of tools and equipment. [Appellant] cashed this check.

[Appellee] filed a motion for summary judgment on December 18, 2014. [The motion sought a legal ruling that Appellant only was entitled to reimbursement in the amount of $1,120.00 for the value of the van and $1,220.68 for the value of his vehicle rental, and that he had been otherwise fully paid under the policy.] On December 16, 2015[, Appellee] filed a praecipe for argument of the motion for summary judgment to be heard on January 19, 2016. [Appellee] served this praecipe upon [Appellant's] attorney by first class mail on December 16, 2015.

[Appellant] and/or [his] attorney did not appear for the argument. After a review of the record and following [Appellee's] argument, th[e trial] court granted [Appellee's] motion for summary judgment and dismissed [Appellant's] complaint upon [Appellee's] payment of [the rental claim in the amount of $1,220.68 and the claim for the cash value of Appellant's van in the amount of $1,120.00].

[Appellant] filed a motion for reconsideration which th[e trial] court denied on February 2, 2016. [Appellant] then filed this timely appeal.[1]

(Trial Court Opinion, 3/24/16, at 1-2) (unnecessary capitalization omitted).

Appellant raises three questions for our review.

A. Whether there was sufficient evidence contained in the record and in []Appellant's brief in response to [the motion for] summary judgment to [demonstrate that] the policy is vague and ambiguous and contained provisions to support [A]ppellant's claims[?]

B. Whether the [A]ppellee acted in bad faith in the handling of [A]ppellant's claims[?]

C. Whether the trial court erred in granting summary judgment after holding a hearing in which [Appellant's] attorney was not present[?]

(Appellant's Brief, at 4) (unnecessary capitalization omitted).

Our standard of review of a court's order granting summary judgment is well-settled.

A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. [*See*] Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving

_____

1 Pursuant to the trial court's order, Appellant filed a timely statement of errors complained of on appeal on March 14, 2016. The trial court filed an opinion on March 24, 2016. *See* Pa.R.A.P. 1925.

party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a nonmoving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

***Byoung Suk An v. Victoria Fire & Cas. Co.***, 113 A.3d 1283, 1287-88 (Pa. Super. 2015), *appeal denied*, 130 A.3d 1285 (Pa. 2015) (case citation omitted).

In his first issue, Appellant maintains that the record contained enough "evidence [that] the policy is vague and ambiguous and contained provisions to support [his] claims[]" to overcome Appellee's motion for summary judgment. (Appellant's Brief, at 8) (capitalization omitted). Specifically, Appellant argues that because "[t]he policies lack a formal declarations page and do not clearly and specifically outline coverages[,]" they are "vague and ambiguous and can be subject to multiple interpretations." (***Id.*** at 9). This issue lacks merit.[2]

> The interpretation of an insurance policy is a question of law for the [C]ourt. Our standard of review, therefore, is plenary. In interpreting the language of an insurance policy, the goal is to ascertain the intent of the parties as manifested by the

---

[2] Appellant provides absolutely no pertinent law or discussion to support his argument that an insurance policy is ambiguous for not containing a formal declarations page. (***See*** Appellant's Brief, at 9). Moreover, review of the insurance policies reveals that they do, in fact, contain declaration pages.

- 4 -

language of the written instrument. The polestar of our inquiry is the language of the insurance policy. When analyzing a policy, words of common usage are to be construed in their natural, plain, and ordinary sense. When the language of the insurance contract is clear and unambiguous, a court is required to give effect to that language. Although a court must not resort to a strained contrivance or distort the meaning of the language in order to find an ambiguity, it must find that contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer.

**Byoung Suk An**, **supra** at 1288 (citation and quotation marks omitted). Additionally, "courts should not under the guise of judicial interpretation, expand coverage beyond that provided in the policy." **Id.** (citation and quotation marks omitted).

In this case, the trial court found that the language of the subject insurance policies is clear and unambiguous, and did not contain any language supporting Appellant's claims for breach of contract and bad faith. (**See** Trial Ct. Op., at 6). We agree.

We first note the well-settled principle that "[t]o successfully maintain a cause of action for breach of contract the plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." **Albert v. Erie Ins. Exch.**, 65 A.3d 923, 928 (Pa. Super. 2013) (citation omitted). As to bad faith, this Court has stated:

To succeed in a bad faith claim, the insured must present clear and convincing evidence that the insurer did not have a reasonable basis for denying benefits under the policy and that

- 5 -

the insurer knew of or recklessly disregarded its lack of reasonable basis in denying the claim. Bad faith in the context of insurance litigation has been defined as any frivolous or unfounded refusal to pay proceeds of [a] policy. To constitute bad faith it is not necessary that the refusal to pay be fraudulent. However, mere negligence or bad judgment is not bad faith. To support a finding of bad faith the insurer's conduct must be such as to import[] a dishonest purpose. It also must be shown that the insurer breached a known duty (*i.e.,* good faith and fair dealing), through some motive of self interest or ill will.

*Bonenberger v. Nationwide Mut. Ins. Co.*, 791 A.2d 378, 380 (Pa. Super. 2002) (citations and quotation marks omitted).

In the case before us, in granting summary judgment to Appellee, the trial court found:

The damages to [Appellant] occurred on January 25, 2012. The argument on [Appellee's] motion for summary judgment was on January 19, 2016. During the almost four years between these two events, the only appraisal was done by [Appellee's] expert. If [Appellant] disagreed with the appraisal, it was [his] duty to provide [his] own appraisal; [he] did not do so. [Appellee's] appraiser valued the van at $1,120.00. The commercial auto policy provides coverage for the insured vehicle under "Physical Damage Comprehensive Coverage" at a limit of "Actual cash value or cost of repair, whichever is less, minus the deductible for each covered auto, but no deductible applies to loss caused by fire or lightning." Therefore, the value of the loss is the actual cash value, less an adjustment for depreciation. No deduction applies to a loss caused by fire. The appraiser valued the van at $1,120.00, the amount th[e trial] court awarded [Appellant].

[Appellant] contended that it cost [him] more than $1,120.00 to buy a replacement van. That may be true, but the policy does not provide for the cost of a replacement van. Although it was not considered in th[e trial] court's decision, [Appellant] finally had the van appraised on January 23, 201[6]. Th[e] court notes, however, that the appraisal was meaningless because it provided the cost range of a replacement van based

on miles and overall condition. Thus, even to the present time, [Appellant has] not secured a meaningful appraisal. For these reasons, th[e trial] court found that the value of the van at the time of the fire was $1,120.00.

[Appellant's] insurance policy provided for rental reimbursement at a rate of $50.00 per day, up to thirty days ($1,500.00). [Appellant] incurred rental expenses of $1,220.68. Th[e trial] court ordered [Appellee] to pay these rental costs.

[Appellant] made a claim for tools and equipment in the amount of $7,001.95. . . .

. . . According to the policy, the blanket limits of insurance for tools and equipment are $5,000.00 for unscheduled items or $2,000.00 for any one item. For additional acquired property, the limit of coverage is the lesser of twenty-five percent of the total limit of insurance, or $1,250.00 based upon the $5,000.00 blanket limit of insurance, or $10,000.00, if the additional acquired property was purchased within thirty days of the loss. Therefore, the limit of insurance for additional acquired property is $1,250.00, assuming it was purchased within thirty days prior to the loss. [Appellant] never identified any equipment that was purchased within thirty days of the loss. For these reasons, [Appellant is] not entitled to additional acquired property coverage.

[Appellant] seek[s] loss of income in the amount of $14,044.00. [His] policy does not provide coverage for lost business income, and [he was] not charged for coverage of lost business income. Therefore, th[e trial] court did not award loss [of] business income.

[Appellant] contend[s] that [he is] owed towing and storage fees. This assertion is without merit. The declarations page of the policy shows that there was no towing limit of coverage provided, and no premium was charged for it. There is also no coverage under [Appellant's] policy for vehicle storage, and [Appellee] did not charge [Appellant] a premium for it. Thus, th[e trial] court granted summary judgment in favor of [Appellee] on this issue.

(Trial Ct. Op., at 6-9) (unnecessary capitalization omitted). Our review of the certified record supports the trial court's findings.

The clear unambiguous language of the commercial auto policy provides that in the event of a total loss, Appellee would provide Appellant with the actual cash value of the covered auto, with "[a]n adjustment for depreciation and physical condition . . . in the event of a total 'loss.'" (Commercial Auto Policy, 2/11/12-2/11/13, at Endorsement to Business Auto Coverage Form, at 2; *see id.* at 1; *see also* Schedule of Coverages and Covered Autos, Physical Damage Comprehensive Coverage (stating limit is "actual cash value or cost of repair, whichever is less[] . . . ." (unnecessary capitalization omitted))). Pursuant to the policy's clear terms, Appellee obtained an appraisal of Appellant's van, agreed to waive the $250.00 deductible, and offered to pay him the $1,120.00 cash value of the vehicle. (*See* Autosource Valuation, 1/25/12, at 2; Motion for Summary Judgment, 12/18/14, at 4). Therefore, based on the insurance policy's clear and unambiguous language, Appellant failed to prove either that Appellee breached the terms of the policy or acted in bad faith by refusing to reimburse Appellant for the replacement cost of the van, and instead offering him its cash value. *See Albert*, *supra* at 928; *see also Bonenberger*, *supra* at 380.

Also, pursuant to the clear language of the rental reimbursement coverage endorsement to the commercial auto policy, Appellant was entitled

- 8 -

to rental reimbursement in the amount of $50.00 per day, for a total of $1,500.00. (**See** Commercial Auto Policy, Rental Reimbursement Coverage, at 1). Appellant presented evidence that he paid $1,220.68 in rental expenses, which Appellee agreed to pay. (**See** Motion for Summary Judgment, 12/18/14, at 3).

Additionally, the clear and unambiguous language of the Inland Marine policy, which covered Appellant's unscheduled tools, provided that the blanket insurance limits were $5,000.00 for any one occurrence. (**See** Inland Marine Supplemental Schedule, 2/11/12-2/11/13, at 1). Although Appellant argues that the policy provides $10,000.00 in coverage for property, our review reveals that this is only for "additional acquired property" beyond the unscheduled tools. (**Id.**) (capitalization omitted). Appellant did not provide any evidence to the trial court or this Court that he had any "additional acquired property" or even any covered, unpaid claims. Therefore, the court's finding that Appellee's $5,000.00 payment to Appellant fully satisfied his insurance claim for the unscheduled tools under his Inland Marine policy is supported by the evidence of record.

Finally, Appellant claims that he presented sufficient "evidence to demonstrate that the policy does in fact contain coverage for loss of business income, and storage fees." (Appellant's Brief, at 9; **see id.** at 8-9). We disagree.

First, the pages of the reproduced record to which Appellant refers in support of his argument that he is entitled to loss of business income do not support his claim that he is entitled to reimbursement for payroll as the sole employee merely because one of them refers to payroll as the premium basis. (*See id.* at 8; Commercial Liability Coverage Part Supplementary Schedule, at 1). Appellant does not identify any part of the policy that provides reimbursement for payroll. Second, although Appellant is entitled to work loss benefits of up to $5,000.00, this applies only when he, as the covered insured, suffers bodily injury as the result of an auto accident. (*See* Commercial Auto Policy, Pennsylvania Added and Combination First Party Benefits Endorsement, at 1-2).

Finally, the storage fee to which Appellant is entitled is contained in the Inland Marine supplemental policy, which provided him with coverage for his tools, not his van. (*See* Appellant's Brief, at 8; Inland Marine Supplemental Schedule, at 1). Therefore, any claims based on storage fees for his van and work loss benefits, fails.

Hence, we conclude that the trial court properly decided that, based on the clear and unambiguous language of the policy, Appellant failed to establish that Appellee breached the insurance policy or acted in bad faith in denying the uncovered claims. *See Albert*, *supra* at 928; *Bonenberger*, *supra* at 380. Appellant's first issue lacks merit.

In his second issue, Appellant claims that "Appellee acted in bad faith in the handling of [his] claims." (Appellant's Brief, at 10) (unnecessary capitalization omitted). Specifically, Appellant argues that Appellee "frivolously" denied him reimbursement for his rental costs. (**Id.**). For the reasons discussed above, (**see infra** at 8-9), this issue lacks merit.

Finally, in his third claim, Appellant maintains that "the trial court erred in granting summary judgment after holding a hearing in which [Appellant's] attorney was not present." (Appellant's Brief, at 11) (unnecessary capitalization omitted). This issue lacks merit.

Pursuant to the note to Pennsylvania Rule of Civil Procedure 1035.3(d), "[p]rocedural requirements with respect to argument and briefs [in motions for summary judgment] are governed by local rule." Pa.R.C.P. 1035.3(d), note. Berks County Local Rule of Civil Procedure Number 211.6, assignment of cases for argument, provides:

> **(a)** At the end of the Tuesday (or Monday if Tuesday is a holiday) preceding the next scheduled argument court date, **Court Administration shall prepare the list of all those cases praeciped for argument**, noting the caption, nature of the matter to be argued, names of counsel or parties without counsel, and name of the judge assigned to the case, whether argument is before a panel of judges or a single judge.

> **(b) Court Administration shall prepare a schedule of assignment of cases** designating courtrooms, judges and times that arguments will be heard at argument court, **and shall post such schedule** by noon of the Thursday (or Wednesday if Thursday is a holiday) preceding argument court in the prothonotary's office and online at www.countyofberks.com/courts, and shall post such schedule on

- 11 -

argument court day in the first floor lobby at the Courthouse and County Services Center.

**(c)** Upon such posting in the prothonotary's office the **prothonotary shall notify the judge** or judges assigned to hear arguments in the respective cases. On argument court day counsel and/or parties shall report directly to the assigned courtroom prior to the time fixed for oral argument for their respective cases.

B.R.C.P. No. 211.6 (emphases added).

Here, Appellee filed a praecipe for argument on its motion for summary judgment on December 16, 2015. (***See*** Praecipe for Argument, 12/16/15). The praecipe identified the requested argument date as January 19, 2016. (***See id.***). In the affidavit of service for argument court, Appellee's counsel certified that she served Appellant's counsel with the praecipe on December 16, 2015. (***See*** Affidavit of Service for Argument Court, 12/16/15). Appellant does not claim that Court Administration failed to adhere to the requirements of Rule 211.6, and there is nothing in the Rule that imposes a duty on a judge to notify a party about the argument date and time. (***See*** Appellant's Brief, at 11); ***see also*** B.R.C.P. No. 211.6. Moreover, Appellant fails to identify a rule that prohibits a court from deciding a motion for summary judgment when one of the parties fails to appear at argument, and we are not aware of any such rule. (***See*** Appellant's Brief, at 11). Accordingly, we conclude that the court did not commit an error of law by granting summary judgment where Appellant's

counsel failed to appear for argument. *See* B.R.C.P. No. 211.6; ***Byoung Suk An***, ***supra*** at 1287-88. Appellant's third issue does not merit relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/13/2016